2019 IL App (1st) 180070-U

No. 1-18-0070

Order filed December 17, 2019.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 CR 8775 |
| | ) | |
| ODIS MATHES, | ) | The Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's conviction for unlawful use or possession of a weapon by a felon is affirmed where the trial court did not admit hearsay testimony.

¶ 2     Following a bench trial, defendant Odis Mathes was found guilty of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to four years' imprisonment. Defendant appeals, arguing that the trial court erroneously admitted a hearsay statement. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with multiple firearm offenses. The State proceeded on one count of UUWF (720 ILCS 5/24-1.1(a) (West 2016)), which alleged defendant knowingly possessed a firearm after having been convicted of felony manufacture or delivery of a controlled substance.

¶ 4    At trial, Jodie Madison testified he has a prior conviction for possession of a controlled substance. On May 27, 2017, he was employed as a security officer at a nightclub in Chicago. He did not carry a firearm. About 3:17 a.m., two women approached Madison. Following a conversation with the women, Madison asked another patron, whom he identified in court as defendant, if he had a firearm. Defendant responded, and Madison learned he was armed. Because the club had a no-firearm policy, Madison escorted defendant to the door and contacted the police.

¶ 5    Once Madison and defendant reached the club's foyer, defendant saw police vehicles outside and attempted to reenter the club. Defendant "tussle[d]" with Madison, pulled a silver semi-automatic firearm with a black handle out of his waistband, and "tried to pass it" to another security guard before dropping it onto the floor. Madison shouted "gun," Chicago police officer Corey Chapton stepped on the firearm, and police took defendant into custody. When defendant dropped the firearm, six people were in the foyer. Later that day, Madison went to the police station and a detective showed him a photograph of the firearm. On the photograph, Madison wrote "This is it." Madison identified the photograph in court.

¶ 6    The State published a surveillance video from the club, which is included in the record on appeal. According to Madison, the video showed him holding a "replica" firearm, walking towards defendant, conversing with him, and then walking defendant towards the front door through the foyer.

¶ 7    On cross-examination, Madison testified that security personnel search some, but not all, individuals prior to entering the club. The club was crowded on the night of the incident. Madison acknowledged that the surveillance video did not show defendant taking the gun from his waistband or dropping it onto the ground. When officers interviewed Madison after the incident, he did not point out the women he spoke to. He could not recall if he told the officers that defendant tried to hand off the firearm.

¶ 8    Chapton testified that he responded to a call at the club around 3:29 a.m. The following colloquy occurred:

"[ASSISTANT STATE'S ATTORNEY]: Officer, why did you go to that location?

[THE WITNESS]: I was called for a person with a gun.

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: He has a right to say why he's going there. He's not identifying anybody so it's not truly hearsay.

Overruled. The answer will stand."

¶ 9    From outside, Chapton observed a security guard and defendant struggling with one another and saw a silver firearm fall from defendant's waistband. Chapton secured it with his foot. Officers recovered and inventoried the firearm, a small, fully-loaded .357-caliber Smith and Wesson. Chapton identified a photograph of the firearm. Chapton also viewed the surveillance video, and testified it accurately reflected him entering the club.

¶ 10    On cross-examination, Chapton testified that only a security officer and defendant were in the foyer when the firearm fell from defendant's waistband, although he could not recall whether

other people were present when he entered the foyer. He did not interview anyone else regarding the incident, and the firearm was not tested for fingerprints or DNA.

¶ 11 The State entered a stipulation that defendant had a prior drug-related conviction under case No. 13 CR 16275.

¶ 12 The trial court found defendant guilty of UUWF, stating that it listened to and observed the witnesses and closing arguments.

¶ 13 Defendant filed a motion for a new trial based on "reasons urged before and during the trial, and every error as may appear from the official transcript of proceedings." The motion did not expressly mention hearsay testimony. The trial court denied defendant's motion and, following a hearing, sentenced him to four years' imprisonment.

¶ 14 On appeal, defendant argues that the trial court erred by allowing the State to elicit Chapton's testimony regarding the contents of the call that brought him to the scene.

¶ 15 Initially, we note that defendant did not properly preserve this issue for appeal. A defendant must object both at trial and in a written posttrial motion to preserve an issue for review. *People v. Reese*, 2017 IL 120011, ¶ 60. Although defendant objected to Chapton's testimony at trial, he failed to include his specific objection in his posttrial motion. "Failure to specify grounds for a new trial in writing in a motion for a new trial has been held *** to constitute waiver of the issue." *People v. Enoch*, 122 Ill. 2d 176, 187 (1988); see *People v. Millighan*, 265 Ill. App. 3d 967, 970-71 (1994) (defendant waived review of error by failing to make anything more than a general averment of error without factual detail in his posttrial motion). Consequently, defendant has forfeited review of the alleged hearsay statement. See *Reese*, 2017 IL 120011, ¶ 60.

¶ 16    Defendant argues in the alternative that his claim may be reviewed for plain error. Under the plain error doctrine, the appellate court may review a forfeited claim when a clear or obvious error occurred, and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant contends the first prong applies. However, our initial inquiry is to determine whether error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 17    The United States and Illinois constitutions guarantee a defendant the right to confront witnesses against him. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible because it deprives a defendant of his right to confrontation. *People v. McLaurin*, 2015 IL App (1st) 131362, ¶ 42.

¶ 18    An out-of-court statement is not hearsay, however, where it is offered for the " 'limited purpose of showing the course of a police investigation where such testimony is necessary to fully explain the State's case.' " *People v. Irwin*, 2017 IL App (1st) 150054, ¶ 29 (quoting *People v. Williams*, 181 Ill. 2d 297, 313 (1998)). "[T]he State may not use the limited investigatory procedure exception to place into evidence the *substance* of any out-of-court statement that the officer hears during his investigation, but may only elicit such evidence to establish the police investigative process." (Emphasis in original.) *People v. Ochoa*, 2017 IL App (1st) 140204, ¶ 41. When, in a bench trial, "evidence is admissible for a limited purpose, it is presumed that the trial

judge *** considered it only for that proper purpose." *People v. Avery*, 227 Ill. App. 3d 382, 389 (1991). This presumption is rebutted where the defendant makes an affirmative contrary showing based on the record on appeal. *Id.*

¶ 19    Evidentiary rulings are typically reviewed under an abuse of discretion standard. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). Defendant contends we should instead apply *de novo* review because the surrounding facts are undisputed and the only question is one of law. However, *de novo* review of evidentiary rulings applies when "a trial court's exercise of discretion has been frustrated by an erroneous rule of law" (*People v. Anderson*, 2017 IL App (1st) 122640, ¶ 49 (internal quotation marks omitted)), and in this case, defendant does not claim the course of investigation rule was inapplicable to Chapton's testimony. Rather, defendant argues the trial court erroneously allowed the State to use the rule to introduce the statement for the truth of the matter asserted, which implicates an exercise of judicial discretion. As such, we will apply the abuse of discretion standard on review. See *id.* An abuse of discretion occurs when the court's finding is "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Leak*, 398 Ill. App. 3d 798, 824 (2010).

¶ 20    Here, the challenged testimony was not hearsay because it was not introduced for the truth of what was said, but explained why Chapton went to the club. The State asked Chapton why he went to the club on May 27, 2017. Chapton responded that he "was called for a person with a gun." Defendant made a hearsay objection, which the court overruled, stating Chapton "has a right to say why he's going there. He's not identifying anybody so it's not truly hearsay." The court's response to defendant's hearsay objection indicates that it accepted the statement only to establish Chapton's course of investigation, and not the truth of the matter asserted, *i.e.*, that a person had a

gun. Because the record demonstrates that the court expressly avoided admitting the statement for an improper purpose, defendant fails to overcome the presumption in favor of the trial judge's ruling.

¶ 21    Notwithstanding, defendant argues that Chapton's testimony exceeded the purpose of showing his course of investigation because it included the substance of the dispatch call. Defendant cites *People v. Jura*, 352 Ill. App. 3d 1080 (2004), and *People v. Warlick*, 302 Ill. App. 3d 595 (1998), in support of his argument that course-of-investigation testimony may not include the substance of an out-of-court conversation. Because we find these cases distinguishable, we are not persuaded by defendant's argument.

¶ 22    In *Jura*, the substance of the out-of-court conversation concerned whether the defendant was the person who committed the charged offense. *Jura*, 352 Ill. App. 3d at 1088. There, the defendant was convicted of UUWF. *Id.* at 1082. At trial, a police officer testified that he received a dispatch call regarding a "person with a gun," described as a "male White with a tattoo with a teardrop on his face," and that the defendant "matched that description." *Id.* at 1086. The court found that the substance of the dispatch call was inadmissible hearsay, reasoning that "[t]he substance of the hearsay statements relied upon by the State directly impact[ed] the very essence of the dispute: whether the defendant was the man who possessed the gun." *Id.* at 1088.

¶ 23    In *Warlick*, the substance of the out-of-court conversation concerned whether the charged offense had taken place. *Warlick*, 302 Ill. App. 3d at 600. At the defendant's trial for burglary, in which he argued he lacked the necessary intent to commit the offense, a police officer testified that he received a "burglary in progress" dispatch call. *Id.* at 597-98. The court held that because "a

serious issue in the case was whether a burglary in fact was taking place," the substance of the dispatch call was inadmissible hearsay. *Id.* at 600.

¶ 24    In contrast to *Jura*, Chapton's testimony that he received a call for a "person with a gun" could not be used as substantive evidence to prove the charge for which defendant was convicted, *i.e.*, UUWF. A person commits UUWF when he knowingly possesses a firearm after being convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2016). The out-of-court statement at issue did not contain a description of the person with a firearm or of the firearm itself, and did not specify whether the person was a felon. Taken for the truth of the matter asserted, all the testimony could potentially prove was that someone with a firearm was at the club, not that defendant was the person who possessed the firearm. Likewise, unlike in *Warlick*, the out-of-court statement did not directly contradict defendant's defense to the charge, nor did it describe an act that constitutes an offense. Therefore, the substance of the testimony did not concern the "essence of the dispute," and as such, was not inadmissible hearsay as to defendant's guilt or innocence of UUWF. See *Jura*, 352 Ill. App. 3d at 1088; *Warlick*, 302 Ill. App. 3d at 600. Because the trial court did not admit impermissible hearsay testimony, defendant's argument fails.

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26    Affirmed.